DS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-26-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                :

UNITED STATES OF AMERICA,      :

    - v. -                 :

TONE N. GRANT,           :

            Defendant.    :

------------------------------------x

**MEMORANDUM AND ORDER**

S4 05 Cr 1192(NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Tone N. Grant was convicted, <u>inter alia</u>, on April 17, 2008 of securities and wire fraud. The Indictment included a forfeiture allegation. The Government has submitted a proposed forfeiture order, pursuant to 18 U.S.C. § 981(a)(1)(c)and 29 U.S.C. § 2461. Specifically, the Government seeks: (a) the entry of a money judgment in the amount of $2,400,000,000 and (b) an order forfeiting towards satisfaction of the money judgement the following property: (i) $4,944,284.42 held by Mr. Grant in an account at Harris N.A., Chicago; (ii) Axa Equitable life insurance polices held by Mr. Grant valued at $465,560, $465,560, $465,560, and $3,273,732; and (iii) the premises known and described as 353 West 56th Street, Apartment 3B, New York, NY. (The "subject property").

Grant objects to the Government's Proposed Preliminary Order of Forfeiture on the grounds that: (1) the assets sought to be forfeited were not the proceeds of the fraud, and (2) that the

money judgment figure is excessive as the defendant cannot be ordered to forfeit money which he never individually possessed. The Government responds that all the funds obtained by Grant after 1997 are the proceeds of the fraud and thus subject to forfeiture. The Government's initial letter of August 14, 2008 addresses with specificity the sources of the "subject property" to establish that the sources are funds tainted by the frauds of which Grant stands convicted. Nothing in Grant's responses undermines the Government's position. There can be no serious dispute that had Grant and his co-conspirators forthrightly acknowledged the existence of the Niederhoffer loans in 1997, Refco would have been forced into bankruptcy. Obviously, had Refco filed for bankruptcy and consequently lost its exchange trading rights, no monies would have been earned by Grant subsequent thereto. Thus, all monies received by Grant thereafter were the proceeds of the fraud.

The Government also maintains that the proof at trial established that the Refco fraud caused losses totaling at least $2.4 billion and Mr. Grant's role and scope of knowledge justify the imposition of the sought after forfeiture judgment regardless of whether Grant personally possessed the proceeds. Grant replies that the loss of (or receipt of) $2.4 billion was not reasonably foreseeable to him and that imposition of joint and several liability is inappropriate here.

The first issue is what is the proposed scope of a forfeiture order. Grant suggests that the forfeiture order should be limited

either to the proceeds that were actually received by Grant or alternatively that forfeiture should be limited to the additional proceeds that Grant would reasonably foresee that he would receive in the future. (Letter of August 27, 2008 at 2.)

Any notion that a criminal forfeiture is limited to actual proceeds received has been squarely rejected. Criminal forfeiture actions are "in personam" actions. United States v. Vampire Nation, 451 F.3d 189, 201-02 (3d Cir. 2006); United States v. Casey, 444 F.3d 1071, 1077 (9th Cir. 2006) ("[m]andatory forfeiture is concerned not with how much an individual has but with how much he received in connection with the commission of the crime." ).

Defendants can be ordered to forfeit the full amount of the proceeds of their crimes. Specifically, "coconspirators are liable jointly and severally to forfeit the reasonably foreseeable proceeds of their criminal activity. To hold otherwise would encourage strategic behavior on the part of coconspirators to hide funds and thwart the purpose of the criminal forfeiture statute." United States v. Coleman Commercial Carrier Inc., 232 F.Supp.2d 201, 204 (S.D.N.Y. 2002). To the extent that Grant argues that the full loss amount was not reasonably foreseeable to him, the evidence at trial refutes any such suggestion.

The case law makes clear that proceeds refers to gross proceeds.[1] The basis for the $2.4 billion dollar judgment was

---

[1]Proceeds are property that a person would not have but for the criminal offense, and proceeds traceable to the offense may be forfeited. See Stefan D. Cassella, Asset Forfeiture Law in the United States § 25-4(a)-(b) (2007). The majority view is that "proceeds" refers to gross, not net, proceeds. Id. § 25-

clearly established at trial.  It is the sum of the amount invested
by Thomas H. Lee during the leveraged buyout, the private debt
offering accompanying the buyout, and the initial public offering
of Refco.  Thus, the money judgment and the forfeiture of the
"subject property" described in the Government's Proposed
Preliminary Order of Forfeiture are appropriate and the Order is
approved.

**IT IS SO ORDERED.**

DATED:      New York, New York
            September , 2008

                                     _Naomi Reice Buchwald_
                                     NAOMI REICE BUCHWALD
                                     UNITED STATES DISTRICT JUDGE

---

4(d).  We acknowledge a certain lack of clarity as to the meaning of "gross
proceeds."  We also acknowledge the reality that one cannot physically forfeit
money one does not have.  We note, however, that in this case, the dispute is
somewhat academic given that Grant will be subject to a restitution order and
given the pendency of civil claims against him.

Copies of the foregoing Order have been faxed and mailed on this date to the following:

David Esseks, Esq.
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY    10007

Gary Naftalis, Esq.
Kramer, Levin, Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY    10036

Luis Barrios
U.S. Pretrial Services